UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MISEMER PHARMACEUTICALS, INC.                                    PLAINTIFF

vs.                                                Civil No. 3:21-cv-00107-GHD-RP

VIRTUS PHARMACEUTICALS, LLC                                      DEFENDANT

---

VIRTUS PHARMACEUTICALS, LLC                                 COUNTERCLAIMANT

vs.

MISEMER PHARMACEUTICALS, LLC;
ARUN KAPOOR                                          COUNTERCLAIM DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court is the Defendant Virtus Pharmaceuticals' motion for judgment on the pleadings [48]. Upon due consideration, and for the reasons set forth below, the Court finds the motion should be granted and the Plaintiff's claims dismissed.

### Background

The parties in this matter are pharmaceutical marketers and distributors. Central to the claims in this litigation is a generic drug named Clidinium, which is used to treat gastrointestinal disorders. In July of 2014, a manufacturer of Clidinium, Belcher Pharmaceuticals, a non-party to this litigation, entered into a Supply Agreement with the Defendant whereby Belcher granted the Defendant the right to serve for seven years as the exclusive distributor and seller of several drugs that Belcher manufactured, including Clidinium. [Doc. 1-2.] In October 2019, prior to the expiration of the term of that Supply Agreement and unbeknownst to the Defendant, Belcher entered into a Development and Supply Agreement with the Plaintiff whereby Belcher agreed to supply the Plaintiff with

Clidinium. [Doc. 1-3.] The Plaintiff used the Belcher-supplied Clidinium to apply for and receive an Abbreviated for New Drug Application (ANDA), No. 210579, from the U.S. Food and Drug Administration (FDA). The Defendant, on the other hand, marketed the Belcher Clidinium under a separate FDA protocol known as Drug Efficacy Study Implementation (DESI).

Upon learning that Belcher had supplied Clidinium to the Plaintiff during the pendency of the Defendant's Supply Agreement with Belcher, the Defendant sent Belcher a letter dated November 25, 2020 [Doc. 24-1], that expressed concern that Belcher and the Plaintiff intended to circumvent the Supply Agreement between Belcher and the Defendant. The letter further asserted the Defendant's exclusive right to distribute and sell Belcher-produced Clidinium and expressed the Defendant's expectation that Belcher and the Plaintiff would refrain from any conduct that violated the exclusivity terms of the Supply Agreement between Belcher and the Defendant. [24-1.] The Defendant subsequently learned that the Plaintiff had also entered into a contractual agreement, denoted as a Binding Term Sheet, with another non-party pharmaceutical distributor, Xiromed, to supply Xiromed with Belcher-manufactured Clidinium. This discovery sparked another letter [Doc. 24-2] from the Defendant's counsel to Belcher, dated March 31, 2021, in which the Defendant stated that "Belcher and Misemer are in violation of the [subject Supply Agreement] between Belcher and its Affiliates, and Virtus." Then, on April 30, 2021, Defendant's counsel sent a cease-and-desist letter to Xiromed that is the subject of the Plaintiff's claims [24-3]. In the relevant part of that letter, the Defendant stated that: (1) "Belcher and Virtus have an existing agreement under which Belcher granted Virtus the sole and exclusive right to sell and distribute [Clidinium] throughout

2

North America;" and (2) the Defendant "asks that Xiromed provide Virtus with written assurance . . . that Xiromed will cease and desist from marketing, selling, or distributing any [Clidinium] manufactured and/or supplied by Belcher and/or Misemer and will terminate any existing arrangements immediately." [24-3]. Xiromed then, on May 10, 2021, sent a letter to the Plaintiff terminating the Binding Term Sheet and any further contractual obligations between Xiromed and the Plaintiff, based on "legal actions pending against Misemer and Belcher which impair the validity and enforceability of the Binding Term Sheet and affects Misemer's ability to perform its contractual obligations." [24-4].

The Plaintiff Misemer then filed this lawsuit asserting two claims against the Defendant Virtus – one for tortious interference with contract (Count 1 in the Amended Complaint) and one for tortious interference with business relations (Count 2). [Doc. 24, at pp. 7-9]. Both claims arise from the April 30, 2021, Cease and Desist Letter [Doc. 24-3] that the Defendant's counsel sent to Xiromed.

The Defendant now moves for judgment on the pleadings [48] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Plaintiff opposes the motion.

**Standard of Review**

After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion. *See Brown v. CitiMortgage, Inc.*, 472 Fed. App'x. 302, 303 (5th Cir. 2012) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially

3

noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (*citing* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509–10 (1990)).

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint therefore 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). In the case *sub judice*, several relevant documents were attached to the Plaintiff's Complaint and Amended Complaint. Those documents, but no others, have been considered and are referenced by the Court in ruling on this motion.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal

is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

## Discussion and Analysis

In essence, the Plaintiff claims that because Xiromed decided to cease pursuing a contractual arrangement with the Plaintiff after the Defendant sent Xiromed the April 30, 2021, cease and desist letter, the Defendant has tortiously interfered with the Plaintiff's contract between it and Xiromed and has tortiously interfered with the Plaintiff's business relationship with Xiromed. In asserting these claims, the Plaintiff states that the Agreement between the Plaintiff and Belcher concerned "approved" Clidinium (because the Plaintiff secured an ANDA from the FDA and planned to market the drug as such) and the agreement between the Defendant and Belcher was for "unapproved" Clidinium (because it was marketed as a DESI drug). Thus, argues the Plaintiff, its agreement with Belcher did not violate Belcher's agreement with the Defendant, and the Defendant's cease and desist letter to Xiromed was therefore improper and tortiously interfered with the Plaintiff's relationship and contract with Xiromed.

The parties agree that Mississippi law applies to the Plaintiff's claims, which are brought under Mississippi law in this diversity action. Under Mississippi law, the elements required to state a claim for tortious interference with contract or with a business relationship are identical:

(1) the subject acts were intentional and willful;

(2) the acts were calculated to cause damage to the plaintiff in his lawful business;

5

(3) the acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant, which act constitutes malice; and

(4) actual damage or loss resulted.

*Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 910 So. 2d 1093, 1098 (Miss. 2005). Under either cause of action, the plaintiff must allege that the defendant acted without justifiable cause, *i.e.*, with malice, which is defined in this context as the willful violation of a known right. *Morrison v. Mississippi Enter. For Tech., Inc.*, 798 So. 2d 567, 574 (Miss. 2001); *Collins v. Collins*, 625 So. 2d 786, 790 (Miss. 1993).

Crucially, Mississippi law adheres to the principle that "even if a party interferes" with another party's contract or business relationship, if the party "has legitimate interest therein or a contractual right to perform said act it is privileged and thus not wrongful and actionable." *Vestal v. Oden*, 500 So. 2d 954, 957 (Miss. 1986). Stated differently, a party is "permitted to interfere with another's contractual relations to protect his own present existing economic interests, such as . . . a prior contract of his own . . . ." *Rex Distributing Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 23d 445, 454 (Miss. 2019). Thus, when a party acts in furtherance of its own contractual relationship, there is no malice and no cause of action for interference. *Cockerham v. Kerr-McGee Chemical Corp.*, 23 F.3d 101, 106 (5th Cir. 1994) (holding no malice present under Mississippi law where defendant had legitimate business interest and potential contractual relationship with subject third party).

In the case *sub judice*, the Court finds that the Plaintiff has failed to adequately plead facts that will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" or facts that "support the elements of the cause of action in order to make out a valid claim." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at

6

556; *Webb*, 522 F. App'x at 241. Specifically, given that the Defendant indisputably had an exclusive contractual relationship with Belcher regarding the supply of Clidinium produced by Belcher, with no mention in that contractual agreement regarding "approved" or "unapproved" supplies of the drug, the Defendant clearly had a legitimate economic and legal interest regarding Belcher's supplying Clidinium to the Plaintiff, and thus in the Plaintiff supplying the drug to Xiromed. Accordingly, and under Mississippi law, the Defendant was therefore privileged in sending the subject April 30, 2021, cease and desist letter to Xiromed, and the Plaintiff therefore cannot state a claim for relief under Mississippi law for interference with contract or with business relations regarding the sending of the letter. *Vestal*, 500 So. 2d at 957; *Rex Distributing Co.*, 271 So. 23d at 454; *Cockerham*, 23 F.3d at 106. The agreement between the Defendant and Belcher simply makes no mention of "approved" or "unapproved" Clidinium and it is not limited in any way to "unapproved" Clidinium. Given these facts, the Plaintiff is unable to state a cause of action for interference based upon the Defendant's sending the subject cease and desist letter to Xiromed – the sending of the letter was plainly privileged under Mississippi law and the Plaintiff therefore cannot state a claim for relief for either cause of action asserted in the Amended Complaint.

Accordingly, the Court finds that the Defendant's motion for judgment on the pleadings should be granted and the Plaintiff's claims dismissed. The Defendant's counterclaims, however, shall proceed at this juncture. *Molett v. Penrod Drilling Co.*, 919 F.2d 1000, 1004 (5th Cir. 1990); *IMFC Professional Servs. of Florida, Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 159 (5th Cir. Unit B, May 1982).

## Conclusion

For these reasons, the Court finds that the Defendant's motion for judgment on the pleadings shall be granted and the Plaintiff's claims dismissed. The Defendant's counterclaims shall proceed.

An order in accordance with this opinion shall issue this day.

THIS, the 30th day of August, 2022.

SENIOR U.S. DISTRICT JUDGE