UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MISEMER PHARMACEUTICALS, INC.      PLAINTIFF

vs.           Civil No. 3:21-cv-00107-GHD-RP

VIRTUS PHARMACEUTICALS, LLC      DEFENDANT

_____

VIRTUS PHARMACEUTICALS, LLC     COUNTERCLAIMANT

vs.

MISEMER PHARMACEUTICALS, LLC;
ARUN KAPOOR     COUNTERCLAIM DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court is the Defendant Virtus Pharmaceuticals' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [83]. Upon due consideration, and for the reasons set forth below, the Court finds the motion should be granted and the Plaintiff's claims dismissed. The Defendant/Counterclaimant's counterclaims have not been adjudicated by the Court and shall therefore proceed.

### Background

The parties are pharmaceutical marketers and distributors. Central to the claims in this litigation is a generic drug named Clidinium, which is used to treat gastrointestinal disorders. In July of 2014, a manufacturer of Clidinium, Belcher Pharmaceuticals, a non-party to this litigation, entered into a Supply Agreement with the Defendant whereby Belcher granted the Defendant the right to serve for seven years as the exclusive distributor and seller of several drugs that Belcher manufactured, including Clidinium. [Virtus/Belcher Agreement, Doc. 1-2.] In October 2019, prior to the expiration of the term

of that Supply Agreement and unbeknownst to the Defendant, Belcher entered into a Development and Supply Agreement with the Plaintiff whereby Belcher agreed to supply the Plaintiff with Clidinium. [Doc. 1-3.] The Plaintiff used the Belcher-supplied Clidinium to apply for and receive an Abbreviated for New Drug Application (ANDA), No. 210579, from the U.S. Food and Drug Administration (FDA). The Defendant, on the other hand, marketed the Belcher Clidinium under a separate FDA protocol known as Drug Efficacy Study Implementation (DESI).

Upon learning that Belcher had supplied Clidinium to the Plaintiff during the pendency of the Defendant's exclusive Supply Agreement with Belcher, the Defendant sent Belcher a letter dated November 25, 2020 [Doc. 24-1], that expressed concern that Belcher and the Plaintiff intended to circumvent the exclusive Agreement between Belcher and the Defendant. The letter further asserted the Defendant's exclusive right to distribute and sell Belcher-produced Clidinium and expressed the Defendant's expectation that Belcher and the Plaintiff would refrain from any conduct that violated the exclusivity terms of the Supply Agreement between Belcher and the Defendant. [24-1.] The Defendant subsequently learned that the Plaintiff had also entered into a contractual agreement, denoted as a Binding Term Sheet, with another non-party pharmaceutical distributor, Xiromed, to supply Xiromed with Belcher-manufactured Clidinium. This discovery sparked another letter [Doc. 24-2] from the Defendant's counsel to Belcher, dated March 31, 2021, in which the Defendant stated that "Belcher and Misemer are in violation of the [subject Supply Agreement] between Belcher and its Affiliates, and Virtus." Then, on April 30, 2021, Defendant's counsel sent a cease-and-desist letter to Xiromed that is the subject of the Plaintiff's claims [24-3]. In the relevant part of that letter, the Defendant

stated that: (1) "Belcher and Virtus have an existing agreement under which Belcher granted Virtus the sole and exclusive right to sell and distribute [Clidinium] throughout North America;" and (2) the Defendant "asks that Xiromed provide Virtus with written assurance . . . that Xiromed will cease and desist from marketing, selling, or distributing any [Clidinium] manufactured and/or supplied by Belcher and/or Misemer and will terminate any existing arrangements immediately." [24-3]. Xiromed then, on May 10, 2021, sent a letter to the Plaintiff terminating the Binding Term Sheet and any further contractual obligations between Xiromed and the Plaintiff based on "legal actions pending against Misemer and Belcher which impair the validity and enforceability of the Binding Term Sheet and affects Misemer's ability to perform its contractual obligations." [24-4].

The Plaintiff, Misemer, then filed this lawsuit asserting two claims against the Defendant Virtus – one for tortious interference with contract (Count 1 in the Amended Complaint) and one for tortious interference with business relations (Count 2). [Doc. 24, at pp. 7-9]. Both claims arise from the April 30, 2021, Cease and Desist Letter [Doc. 24-3] that the Defendant's counsel sent to Xiromed.

The Defendant previously moved for judgment on the pleadings [48] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court granted the Defendant's motion, but permitted the Plaintiff to file a Second Amended Complaint [68, 81]. The Plaintiff has now filed its Second Amended Complaint, in which it reasserts the identical two claims it previously asserted [82]. The Defendant now moves again [83] to dismiss the Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Plaintiff opposes the motion.

## Standard of Review

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint therefore 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). In the case *sub judice*, several relevant documents were attached to the Plaintiff's Complaint, Amended Complaint, and Second Amended Complaint. Those documents, but no others, have been considered and are referenced by the Court in ruling on this motion.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that

is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

### Discussion and Analysis

In essence, the Plaintiff continues to claim that because Xiromed decided to cease pursuing a contractual arrangement with the Plaintiff after the Defendant sent Xiromed the April 30, 2021, cease and desist letter, the Defendant has tortiously interfered with the Plaintiff's contract between it and Xiromed and has tortiously interfered with the Plaintiff's business relationship with Xiromed. In asserting these claims, the Plaintiff once again states that the agreement between the Plaintiff and Belcher concerned "approved" Clidinium (because the Plaintiff secured an ANDA from the FDA and planned to market the drug as such) and the agreement between the Defendant and Belcher was for "unapproved" Clidinium (because it was marketed as a DESI drug). In its latest amended complaint, the Plaintiff reasserts its previous arguments and adds the following assertions: (1) that Section 2.7 of the Agreement between the Defendant and Belcher, entitled "Future Products Right of First Refusal," supports the Plaintiff's argument that the Virtus/Belcher Agreement distinguishes between "approved" and "unapproved" Clidinium; and (2) that evidence extrinsic to that Agreement itself, despite the fact that the Court has found the Agreement to be unambiguous, supports the Plaintiff's position. Thus, re-argues the Plaintiff, its agreement with Belcher did not violate Belcher's agreement with the Defendant, and the Defendant's cease and desist letter to Xiromed was therefore improper and tortiously interfered with the Plaintiff's relationship and contract with Xiromed.

As the Court has previously stated, under Mississippi law, the elements required to state a claim for tortious interference with contract or with a business relationship are identical:

(1) the subject acts were intentional and willful;
(2) the acts were calculated to cause damage to the plaintiff in his lawful business;
(3) the acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant, which act constitutes malice; and
(4) actual damage or loss resulted.

*Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 910 So. 2d 1093, 1098 (Miss. 2005). Under either cause of action, the plaintiff must allege that the defendant acted without justifiable cause, *i.e.*, with malice, which is defined in this context as the willful violation of a known right. *Morrison v. Mississippi Enter. For Tech., Inc.*, 798 So. 2d 567, 574 (Miss. 2001); *Collins v. Collins*, 625 So. 2d 786, 790 (Miss. 1993).

Crucially, Mississippi law adheres to the principle that "even if a party interferes" with another party's contract or business relationship, if the party "has legitimate interest therein or a contractual right to perform said act it is privileged and thus not wrongful and actionable." *Vestal v. Oden*, 500 So. 2d 954, 957 (Miss. 1986). Stated differently, a party is "permitted to interfere with another's contractual relations to protect his own present existing economic interests, such as . . . a prior contract of his own . . . ." *Rex Distributing Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 23d 445, 454 (Miss. 2019). Thus, when a party acts in furtherance of its own contractual relationship, there is no malice and no cause of action for interference. *Cockerham v. Kerr-McGee Chemical Corp.*, 23 F.3d 101, 106 (5th Cir. 1994) (holding no malice present under Mississippi law where defendant had legitimate business interest and potential contractual relationship with subject third party).

In the case *sub judice*, the Court finds that the Plaintiff has again failed to adequately plead facts that will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" or facts that "support the elements of the cause of action in order to make out a valid claim." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556; *Webb*, 522 F. App'x at 241. Specifically, and as the Court has previously held, given that the Defendant indisputably had an exclusive contractual relationship with Belcher regarding the supply of Clidinium produced by Belcher, with no mention in that contractual agreement regarding "approved" or "unapproved" supplies of the drug, the Defendant clearly had a legitimate economic and legal interest regarding Belcher's supplying Clidinium to the Plaintiff and thus in the Plaintiff supplying the drug to Xiromed. Accordingly, and under Mississippi law, the Court again holds that the Defendant was therefore privileged in sending the subject April 30, 2021, cease and desist letter to Xiromed, and the Plaintiff therefore cannot state a claim for relief under Mississippi law for interference with contract or with business relations regarding the sending of the letter. *re*, 500 So. 2d at 957; *Rex Distributing Co.,* 271 So. 23d at 454; *Cockerham*, 23 F.3d at 106. The agreement between the Defendant and Belcher simply makes no mention of "approved" or "unapproved" Clidinium and the agreement is not limited in any way to "unapproved" Clidinium.

The Plaintiff's latest Amended Complaint attempts to avoid the plain and unambiguous text of the Virtus/Belcher Agreement by asserting, for the first time, that

Section 2.7(a) of the Agreement, entitled "Future Products Right of First Refusal," supports the Plaintiff's interpretation of the Agreement.[1] This provision provides:

> 2.7 Future Products Right of First Refusal. (a) Right of First Refusal. Supplier hereby grants, and shall cause its Affiliates to grant, to Virtus the right of first refusal with respect to the following types of transactions: (i) the rights to distribute Cefixime, Sodium Polystyrene Sulfonate, or Tacrolimus or any future drug products manufactured by Supplier at the Facility; (ii) the rights to distribute any Competing Products manufactured by Supplier at the Facility; (iii) any development or co-development agreement relating to any future drug product to be manufactured by Supplier at the Facility pursuant to which Supplier desires to license the marketing rights to a Third Party; and/or (iv) sale of the ANDA governing a product referenced in any of the foregoing for which Virtus has exclusive supply rights in the event Supplier intends to sell such ANDA (each, a "Transaction").

Agreement, Doc. 1-2, at Section 2.7. In essence, the Plaintiff argues that because "approved" Clidinium could be a "future product," the Virtus/Belcher Agreement thus distinguishes between "approved" and "unapproved" Clidinium, and the Defendant's subject April 30, 2021, cease and desist letter to Xiromed was therefore not privileged.

The Court disagrees. As a plain reading makes clear, Section 2.7 makes no reference whatsoever to Clidinium. Nor does Section 2.7 use the term "Product," which is defined in the Agreement to mean specific listed drugs, including Clidinium, and which contains no reference to "approved" or "unapproved" Clidinium. [Doc. 1-2, at Section 141.] Rather, Section 2.7 lists several specific drugs that are not covered or listed elsewhere in the Agreement and refers to other "future drug products" and the sale of an "ANDA governing a product referenced" in Section 2.7(a) (emph. added). Section 2.7, as noted above, makes no reference to Clidinium.

---

[1] While Mississippi law applies to the Plaintiff's claims, interpretation of the Agreement itself is governed by Delaware law. *See* Virtus/Belcher Agreement, Doc. 1-2, Section 14.5. In any event, no conflict exists between Mississippi and Delaware law regarding interpretation of the Agreement.

Given the Court's plain reading of the parties' Agreement, the Court finds that the Plaintiff's argument regarding Section 2.7 falls short and would require a strained interpretation of the Agreement that is clearly contrary to the Agreement's plain and unambiguous text. Under both Mississippi and Delaware law, the language itself of the subject contract controls. *JER Hudson GP XXI LLC v. DLE Invs., LP*, 275 A.3d 775, 800 (Del. Ch. 2022) (holding that courts should "give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions."); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (holding that when a party's pleading is "contradicted by a written instrument incorporated into the pleadings, the written instrument and not the allegation controls."); *Nutrien Ag Sols., Inc. v. Funderburk*, No. 1:19CV184-GHD-DAS, 2020 WL 3229303, at *2 (N.D. Miss. June 15, 2020) (holding that "the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy."). In addition, Delaware courts have made clear that, under Delaware law, contract interpretations that would create a result contrary to the contract's overall intent are untenable. *ITG Brands, LLC v. Reynolds Am., Inc.*, No. CV 2017-0129-AGB, 2017 WL 5903355, at *12 (Del. Ch. Nov. 30, 2017) (court rejected contract interpretation that would lead to "absurd result" contrary to agreement's overall intent); *Cont'l Warranty, Inc. v. Warner*, 108 F. Supp. 3d 256, 259 (D. Del. 2015).

In sum, the Court finds that the Plaintiff's argument related to Section 2.7 is without merit. As the Court held in its previous ruling regarding the Plaintiff's earlier-filed complaint, the Virtus/Belcher Agreement clearly provides the Defendant with an exclusive contractual relationship with Belcher regarding the supply of Clidinium produced by

Belcher, with no mention in that contractual agreement regarding "approved" or "unapproved" supplies of the drug. To accept the Plaintiff's interpretation of Section 2.7 would essentially require nullifying the entire remainder of the Agreement, which is a result the Court finds would be an untenable result, given the plain and unambiguous language of the Agreement. Accordingly, the Court finds that the Plaintiff's argument regarding Section 2.7 is without merit and does not help the Plaintiff state a plausible claim for relief.

The Plaintiff's remaining new arguments in its Second Amended Complaint either violate the parol evidence rule or are conclusory allegations and legal conclusions that, by definition and settled legal precedent, do not qualify as well-pleaded factual allegations sufficient to state a plausible claim for relief under Rule 12(b)(6). See, e.g., *Hibbets v. Lexington Ins. Co.*, 377 F. App'x 352, 356 (5th Cir. 2010) (disregarding conclusory allegation in pleading); *HeartSouth, PLLC v. Boyd*, 865 So. 2d 1095, 1107 (Miss. 2003) (holding that "[i]t is a well settled principle of contract law that parol evidence should never be admitted where the terms of a contract are clear and unambiguous."); *CSL Behring, LLC v. Bayer Healthcare, LLC*, No. CV 18-170-RGA, 2019 WL 4451368, at *2 (D. Del. Sept. 17, 2019) (holding that "[c]ourts regularly conclude that written agreements containing an 'entire agreement' clause are fully integrated and may not be modified . . . by extrinsic evidence."); *Cont'l Warranty*, 108 F. Supp. 3d at 259-60 (D. Del. 2015) (holding that where text of agreement is clear, agreement's plain text controls, and court may not consider extrinsic evidence).[2] As the Court has made clear, both previously and herein, the

---

[2]    The Virtus/Belcher Agreement contains a "Complete Agreement" clause, at Section 14.2, in which the parties agreed that the Agreement "contains the complete agreement among the Parties and supercedes any prior understandings, written or oral, which may have related to the subject matter hereof in any way . . ." Agreement, Doc. 1-2, at para. 14.2.

Virtus/Belcher Agreement clearly and unambiguously provides the Defendant with an exclusive contractual relationship with Belcher regarding the supply of Clidinium produced by Belcher, with no mention in that contractual agreement regarding "approved" or "unapproved" supplies of the drug. The Plaintiff's inclusion of assertions related to the importance and relative pricing power in the general pharmaceutical marketplace of "approved" versus "unapproved" drugs, or of negotiations that may have occurred between the parties subsequent to the parties' execution of the Virtus/Belcher Agreement, simply are not relevant to the Court's interpretation of the Agreement under the prevailing legal standards.

Given these facts and the Court's reading of the plain and unambiguous language of the Virtus/Belcher Agreement, the Court once again holds that the Plaintiff is unable to state a cause of action for interference based upon the Defendant's sending the subject cease and desist letter to Xiromed – the sending of the letter was plainly privileged under Mississippi law and the Plaintiff therefore cannot state a claim for relief for either cause of action asserted in the Second Amended Complaint.

Accordingly, the Court finds that the Defendant's motion to dismiss should be granted and the Plaintiff's claims dismissed. The Defendant's counterclaims, however, shall proceed at this juncture. *Molett v. Penrod Drilling Co.*, 919 F.2d 1000, 1004 (5th Cir. 1990); *IMFC Professional Servs. of Florida, Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 159 (5th Cir. Unit B, May 1982).

## Conclusion

For these reasons, the Court finds that the Defendant's motion to dismiss shall be granted and the Plaintiff's claims dismissed. The Defendant's counterclaims shall proceed.

An order in accordance with this opinion shall issue this day.

THIS, the _____ day of April, 2023.


_____
SENIOR U.S. DISTRICT JUDGE